UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALICE LEE GIANNETTA,

|                                        | Plaintiff, |
| :--- | ---: |

-v-

TANA JOHNSON,

Defendant.

20 Civ. 9016 (PAE)

<u>OPINION & ORDER</u>

---

PAUL A. ENGELMAYER, District Judge:

*Pro se* plaintiff Alice Lee Giannetta ("Giannetta") brings claims against defendant Tana Johnson ("Johnson") for libel *per se* and tortious interference with prospective economic advantage. Giannetta, a former Mrs. World Pageant contestant and title-holder, alleges that Johnson, a Vice President of Mrs. World, Inc. ("MWI"), sent a defamatory press release to a number of MWI employees and Giannetta's business associates. The press release accused Giannetta of, among other wrongdoings, misappropriating MWI funds.

Pending now is Johnson's motion to dismiss the complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). For the following reasons, the Court grants the motion to dismiss without prejudice.

# I.    Background

## A.    Factual Background[1]

### 1.    The Parties

Giannetta is a New York City-based attorney licensed to practice in New York and New Jersey.  Compl. ¶ 1.  She won several of MWI's beauty pageants, namely Mrs. New York, Mrs. Hong Kong, and Mrs. World.  *Id.* ¶¶ 2, 4.  Giannetta is the first woman of Chinese descent to be named Mrs. World; she later engaged in extensive volunteer work and advocacy for MWI.  *Id.*

Johnson is a part-time independent contractor for MWI and holds the title of "Vice President" of MWI.  Johnson Decl. ¶ 4.  Johnson also allegedly has some unspecified relationship with MWI affiliates: Mrs. America Inc. ("MAI"), Miss for America Inc., and Mrs. America Presents.  Giannetta Decl. ¶ 2.  Johnson represents, without refutation, that, notwithstanding her Vice President title, she is not now, nor has she ever been, an officer, owner, director, employee, or manager of MWI.  Johnson Decl. ¶¶ 4–5.  She resides in Montana, and attests that she has never lived, owned property, visited, or done business in New York.  *Id.* ¶ 2.

---

[1] The Court's account of the factual allegations is drawn primarily from the Complaint.  Dkt. 1 ("Compl.").  On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court may look beyond the four corners of the complaint and consider materials outside of the pleadings, including accompanying affidavits, declarations, and other written materials.  *See Jonas v. Est. of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015) (citing *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)).  The allegations in the complaint are presumed true "to the extent they are uncontroverted by the defendant's affidavits," *MacDermid*, 702 F.3d at 727 (citation omitted), and all factual disputes are resolved in the plaintiff's favor, *see DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).  Accordingly, the Court has considered Johnson's opening declaration, Dkt. 9-1 ("Johnson Decl."), and reply declaration, Dkt. 12-1 ("Johnson Reply Decl."); the facts included in her memorandum of law in support of her motion to dismiss, Dkt. 9 ("Def. Mem."); and Giannetta's opposition to that motion, Dkt. 11 ("Opp'n"), and declaration, Dkt. 11-1 ("Giannetta Decl.").

## 2.    MWI's Operations and Johnson's Responsibilities

Giannetta alleges that MWI and its affiliates run beauty pageant competitions in all 50 states and D.C., in addition to national and international competitions.  *See* Opp'n ¶¶ 7–9; Giannetta Decl. ¶¶ 3, 8–9 (alleging that Johnson recruits and accepts licenses for these pageants). Most states have pageant directors; all directors, local and international, pay annual license fees to the pageant companies.  Opp'n ¶¶ 25–26; Johnson Decl. ¶ 9.  United States-based directors pay fees between $2,500 and $5,000 annually; international directors pay between $2,500 and $10,000 annually.  Opp'n ¶¶ 25–26.  Each contestant pays between $1,650 and $2,500 per competition to participate in the pageants.  *Id.* ¶ 24.  MWI-affiliated pageant companies have been recruiting contestants and running competitions in New York since 1977.  *Id.* ¶ 14.

Giannetta alleges that Johnson personally recruits contestants year-round and is paid a fee per contestant recruited.  *Id.* ¶ 16; Giannetta Decl. ¶¶ 7–9.  She further alleges that Johnson routinely communicates and transacts with directors across the country, makes executive decisions, and accepts fees from contestants.  *See* Opp'n ¶ 17; Giannetta Decl. ¶ 3.  Johnson contests this description of her work.  She claims that she does not recruit contestants and that she is paid a fixed monthly stipend as a contractor.  *See* Johnson Reply Decl. ¶ 3; Johnson Decl. ¶ 4.

## 3.    Giannetta's Involvement with MWI

Upon winning the title of Mrs. World at the 2017 MWI beauty pageant, Giannetta began to promote MWI.  Compl. ¶ 6.  In August 2018, Giannetta first met Johnson at a national pageant run by Mrs. World.  *Id.* ¶ 26.

On December 8, 2019, David Marmel ("Marmel"), MWI's former president, requested that Giannetta leverage her personal connections with businesses in Sri Lanka ("Sri Lankan Partners") to host the 2021 Mrs. World pageant there.  *Id.* ¶ 30.  Johnson allegedly knew of that

request.  *Id.* ¶ 31.  The Sri Lankan Partners did not have any prior relationship with Johnson; they were Giannetta's personal contacts.  *Id.* ¶ 35.

On December 23, 2019, Giannetta secured an agreement with Vogue Jewelers of Sri Lanka ("Vogue Jewelers") to be the main sponsor of the 2021 pageant, in exchange for $75,000. *Id.* ¶ 33; *id.*, Ex. B (email with subject line "Confidential Mrs World 2021 Event" from Vogue Jewelers detailing terms for the collaboration).  On February 27, 2020, Marmel sent a letter to Vogue Jewelers authorizing Giannetta to accept all funds and make all executive decisions regarding the 2021 Mrs. World pageant.  *Id.*, Ex. C (letter from Marmel on MWI letterhead stating that he had authorized Giannetta "to handle all matters relating to the Pageant").  On or about February 29, 2020, Giannetta flew to Sri Lanka to launch, along with her Sri Lankan Partners, the Mrs. World 2021 pageant at a press conference.  *Id.* ¶ 38.  She paid for her own travel expenses.  *Id.* ¶ 39.  Johnson allegedly was aware of the press conference and that Giannetta paid her own expenses.  *Id.*

On or about March 6, 2020, Marmel told Giannetta that he was undergoing chemotherapy treatment.  *Id.* ¶ 41.  The following day, he authorized her to handle all matters pertaining to the 2021 pageant.  *Id.* ¶ 42; *id.*, Ex. D (letter from Marmel on MWI letterhead authorizing Giannetta to "handle all matters relating to the Mrs. World 2021 Pageant and Mrs. World Incorporated"). Giannetta's Complaint suggests that she and Marmel attempted to reach some agreement regarding the sale of MWI, but on April 30, 2020, the two concluded that they could not reach an agreement.  *Id.* ¶ 43.  The Complaint, however, does not state to whom Marmel was contemplating selling MWI, or what role Giannetta played in the potential sale.

In May 2020, Giannetta resigned from MWI.  *Id.* ¶ 44.  About the same time, Johnson discovered that Giannetta was in negotiations with the Sri Lankan Partners to host a "pageant/

fashion event" for fall 2021. *Id.* The Complaint does not provide any detail about this event, nor does it explain whether the event was affiliated with MWI.

### 4. Johnson's Allegedly Defamatory Communications

On May 3, 2020, Johnson posted an announcement on the Mrs. World Facebook account stating that Giannetta had been "dismissed" from Mrs. World and "removed from office." *Id.* ¶ 45. On or about May 4, 2020, "[u]pon information and belief," Johnson sent a press release concerning Giannetta's termination to the Sri Lankan Partners and posted it in a Mrs. America Facebook group. *Id.* ¶ 46; *id.*, Ex. A ("Press Release"). Directors and affiliates of Mrs. America, many of whom Giannetta claims to know, had access to the Facebook page. *Id.* ¶ 49. Johnson also sent the Press Release directly to the pageant director of New York State, Diane Hardgrove ("Hardgrove"), whom Giannetta knew through her first pageant win. *Id.* ¶¶ 50–51. Johnson attests that Hardgrove resides in Texas, and that none of the recipients of the Press Release live in New York. *See* Johnson Decl. ¶ 9.

The Press Release, signed by Johnson, stated that (1) Giannetta had been "sacked" after she had supposedly lied to the organizing committee for the upcoming Sri Lankan pageant; (2) Giannetta "misappropriated Sri Lankan/Mrs. World revenues and refuse[d] to return the monies," making her a "liar and a thief" in the opinion of Mrs. World; (3) the recently deceased Marmel had been in good health; and (4) Giannetta reportedly planned to start her own competition which would "probably adopt a title similar to Mrs [sic] World in order to cause confusion and unrest." *See* Press Release. The Press Release explicitly stated that any money paid to Giannetta was "money stolen!" *Id.*

On May 6, 2020, Giannetta received an email from the Sri Lankan Partners indicating that they had negotiated with Johnson and had contracted to host the Mrs. World 2021 pageant, which the Complaint alleges was "the same deal that [Giannetta] negotiated and contracted with,

with all of the parties that were procured exclusively by [Giannetta]."  Compl. ¶ 58.  The same

day, Johnson posted a note on the public-facing Mrs. World Facebook page confirming that the

2021 pageant would occur in Sri Lanka.  *Id.* ¶ 59.

On May 7, 2020, Giannetta received an email from Vogue Jewelers demanding that she

return a deposit that she had apparently secured from Vogue Jewelers while working on behalf of

MWI.  *Id.* ¶ 60.  That email allegedly cited to the Press Release.  *Id.*  Vogue Jewelers also

contacted Giannetta over WhatsApp to state that they would no longer discuss pageants with her.

*Id.* ¶ 61.

### B.  Procedural History

On October 28, 2020, Giannetta filed the Complaint.  Compl.  On January 20, 2021,

Johnson filed a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2).  Def.

Mem.  On January 21, 2020, the Court ordered Giannetta to either amend her Complaint or

oppose the motion to dismiss.  Dkt. 10.  On February 10, 2021, Giannetta filed an opposition.

Opp'n.  On February 24, 2021, Johnson filed a reply.  Dkt. 12.

## II.  Applicable Legal Standards

### A.  Burden of Proof

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), "the

plaintiff bears the burden of establishing that the court has jurisdiction over the defendant."

*DiStefano*, 286 F.3d at 84 (citation omitted); *see also In re Terrorist Attacks on Sept. 11, 2001*,

714 F.3d 659, 673 (2d Cir. 2013).  "[T]he showing a plaintiff must make to defeat a defendant's

claim that the court lacks personal jurisdiction over it 'varies depending on the procedural

posture of the litigation.'"  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84

(2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197

(2d Cir. 1990)).

"Where, as here, a district court in adjudicating a motion pursuant to Federal Rule of Civil Procedure 12(b)(2) 'relies on the pleadings and affidavits, and chooses not to conduct a full-blown evidentiary hearing, plaintiffs need only make a prima facie showing of personal jurisdiction.'" *S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)). "This showing may be made through the plaintiff's 'own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant.'" *Id.* (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)).

The Court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Dorchester Fin. Sec.*, 722 F.3d at 85 (quoting *S. New Eng. Tel.*, 624 F.3d at 138); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993) ("[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party."). Nevertheless, the Court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks*, 714 F.3d at 673 (citations omitted); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).

## B.    Requirements for Personal Jurisdiction

There are three requirements for a federal court to lawfully exercise personal jurisdiction. "First, the plaintiff's service of process upon the defendant must have been procedurally proper." *Licci*, 673 F.3d at 59. Second, "there must be a statutory basis for personal jurisdiction that renders such service of process effective." *Id.* Third, "an exercise of jurisdiction under these laws [must be] consistent with federal due process requirements." *Grand River Enters. Six*

*Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–78 (1985).

### 1.     Service of Process

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) (citation omitted).  Federal Rule of Civil Procedure 4 governs the content, issuance, and service of a summons.  Rule 4 provides that an individual may be served pursuant to the procedures allowed by state law in the state in which the district court is located.  Fed. R. Civ. P. 4(e).  The law of the State of New York, for purposes of Rule 4(e)(1), allows for four methods of service on an individual.  Among the acceptable methods are "delivering the summons within the state to the person to be served," N.Y. C.P.L.R. ("CPLR") § 308(1), and "delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served" and then, within 20 days of delivery, either "mailing the summons to the person to be served at his or her last known residence" or "mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend 'personal and confidential'," CPLR § 308(2); *see Dezonie v. Asset Prot. & Sec., Inc.*, No. 08 Civ. 11261 (HB), 2009 WL 1873527, *3 (S.D.N.Y. June 30, 2009); *Pearson v. Bd. of Educ. of City of N.Y.*, No. 02 Civ. 3629 (RCC), 2004 WL 2297354, at *3 (S.D.N.Y. Oct. 12, 2004).

### 2.     Statutory Basis

A court must also have a statutory basis for asserting personal jurisdiction over each defendant based on the law of the state in which it sits.  CPLR § 301 provides for general jurisdiction, which may arise from a foreign defendant's overall course of business in the state.  Such jurisdiction is proper when "a company has engaged in such a continuous and systematic

course of doing business in New York that a finding of its presence in New York is warranted." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (cleaned up); *see also MTS Logistics, Inc. v. Innovative Commodities Grp.*, 442 F. Supp. 3d 738, 754 (S.D.N.Y. 2020).

New York's long-arm statute also provides for specific jurisdiction, which may arise from the foreign defendant's contacts with the state in connection with the cause of action. *See* CPLR § 302(a). Here, Giannetta argues that this Court has a statutory basis for specific jurisdiction over Johnson under CPLR § 302(a)(3). In connection with causes of action other than those sounding in defamation, CPLR § 302(a)(3) permits courts to exercise personal jurisdiction over a non-domiciliary defendant "who in person or through an agent . . . commits a tortious act without the state causing injury to person or property within the state." *Id.* § 302(a)(3). CPLR § 302(a)(3) applies only to a defendant that either "(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state," or "(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." *Id.* The Court reviews, *infra*, the requirements for establishing specific jurisdiction as to non-domiciliary defendants sued for defamation.

### 3.     Due Process

Once a *prima facie* showing of a statutory basis for jurisdiction has been made, the plaintiff must "demonstrate that the exercise of personal jurisdiction comports with due process." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018); *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The constitutional analysis under the Due Process Clause consists of two distinct inquiries: into "minimum contacts" and "reasonableness." *Licci*, 673 F.3d at 60 (citing *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010)).

The "minimum contacts" inquiry examines "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Id.* (citation omitted). The Court considers these contacts in totality, with the crucial question being whether the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws such that [the defendant] should reasonably anticipate being haled into court there." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242–43 (2d Cir. 2007) (internal quotation marks omitted) (quoting *Burger King*, 471 U.S. at 474–75). To satisfy this minimum-contacts inquiry, the Court "recogniz[es] two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021). General jurisdiction exists when a defendant is "essentially at home" in the forum state. *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011). In "the 'paradigm' case, an individual is subject to general jurisdiction in her place of domicile. And the 'equivalent' forums for a corporation are its place of incorporation and principal place of business." *Ford Motor Co.*, 141 S. Ct. at 1024 (citation omitted) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). Specific jurisdiction exists only if there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). For specific jurisdiction to exist, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Ford Motor Co.*, 141 S. Ct. at 1025 (cleaned up); *see also Walden v. Fiore*, 571 U.S. 277, 285 (2014).

The "reasonableness" inquiry examines "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Licci*, 673 F.3d at 60 (quoting *Chloé*, 616 F.3d at 164). The Court considers:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Chloé*, 616 F.3d at 164–65 (citing *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 113–14 (1987)).

## III.    Discussion

Johnson argues that the Complaint should be dismissed for lack of personal jurisdiction under Rule (12)(b)(2). She contends that Giannetta has failed to make a *prima facie* showing of a statutory basis for personal jurisdiction, and cannot demonstrate minimum contacts sufficient to establish either the general or specific personal jurisdiction required by due process. *See In re Terrorist Attacks*, 714 F.3d at 673–74; *Charles Schwab Corp.*, 883 F.3d at 81–82. The Court first examines whether Johnson is subject to general jurisdiction in New York, and then considers whether this Court has specific jurisdiction over her.

### A.    General Jurisdiction

CPLR § 301 "allows courts in New York to exercise general personal jurisdiction over individuals who are 'domiciled in New York, have a physical presence in New York, . . . consent to New York's exercise of jurisdiction, [or,] . . . 'do[ ] business' in [New York].'" *Delgado-Perez v. City of New York*, No. 17 Civ. 01194 (LTS), 2018 WL 6200039, at *2 (S.D.N.Y. Nov. 28, 2018) (quoting *Pinto-Thomaz v. Cusi*, No. 15 Civ. 1993 (PKC), 2015 WL 7571833, at *3 (S.D.N.Y. Nov. 24, 2015)). Johnson, however, is a citizen of Montana, and has lived in the

state continuously since 1987. Johnson Decl. ¶ 2. She is neither domiciled, nor has any physical presence, in New York, as she owns no real or personal property in the state. *Id.*

For a New York court to exercise general jurisdiction over a nonresident defendant, that defendant must be "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." *McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981) (quoting *Simonson v. Int'l Bank*, 14 N.Y.2d 281, 285 (1964)); *see also TAGC Mgmt., LLC v. Lehman*, 842 F. Supp. 2d 575, 581 (S.D.N.Y. 2012) ("Under CPLR § 301, general jurisdiction, which arises out of a defendant's contacts with the forum even if the contacts are unrelated to the action before the court, is established over a foreign corporation or individual engaging in a continuous and systematic course of doing business in New York." (citation omitted)). "Although the 'doing business' test is most often used to find jurisdiction over a corporate defendant, this test can be applied to a nonresident individual." *Rosado v. Bondi*, No. 16 Civ. 6916 (NSR), 2017 WL 4947122, at *3 (S.D.N.Y. Oct. 27, 2017) (quoting *Patel v. Patel*, 497 F. Supp. 2d 419, 425 (E.D.N.Y. 2007)). In such cases, the individual defendant still "must be 'engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction.'" *Patel*, 497 F. Supp. 2d at 425 (quoting *J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 547–48 (S.D.N.Y. 2001)). New York courts have interpreted CPLR § 301 to require that the defendant "be present in New York not occasionally or casually, but with a fair measure of permanence and continuity"; factors examined include indicia of a physical presence in the state, such as the existence of an office, bank accounts, or other property in the state. *Id.* (cleaned up).

Giannetta's showing falls well short of meeting that standard; indeed she does not explicitly argue that this Court has general jurisdiction over Johnson. She impliedly does so in

arguing that Johnson, as Vice President of MWI, recruits pageant contestants from New York and otherwise "routinely communicates . . . and transacts with directors, contestants and vendors from all over the United States, including the pageant director and pageant contestants for the New York Pageant." Opp'n ¶ 17. Johnson disputes these assertions, *see* Johnson Reply Decl. ¶¶ 3–4, representing that she has never done business in New York, or even visited the state, *see* Johnson Decl. ¶ 2.

Even taking as true Giannetta's description of Johnson's New York business activities on behalf of MWI, these cannot establish general personal jurisdiction over Giannetta. Critically, "New York courts have concluded that [because] CPLR 301 applies to persons acting only in their *individual* capacities, . . . their activities on behalf of an employer or corporation will not support the exercise of personal jurisdiction." *Pinto-Thomaz*, 2015 WL 7571833, at *5 (emphasis added); *see also Laufer v. Ostrow*, 55 N.Y.2d 305, 313 (1982) (a defendant "does not subject himself, individually, to the CPLR 301 jurisdiction of our courts, however, unless he is doing business in our State individually"); *Wallace Church & Co. v. Wyattzier, LLC*, No. 20 Civ. 1914 (CM), 2020 WL 4369850, at *5 (S.D.N.Y. July 30, 2020) ("An individual defendant 'cannot be subject to jurisdiction under CPLR § 301 unless he is doing business in New York as an individual rather than on behalf of a corporation.'" (quoting *Brinkmann v. Adrian Carriers, Inc.*, 29 A.D.3d 615, 617 (2d Dep't 2006))); *Giuliano v. Barch*, No. 16 Civ. 0859 (NSR), 2017 WL 1234042, at *5 (S.D.N.Y. Mar. 31, 2017) ("[I]ndividuals acting on a corporation's behalf are not subject to general personal jurisdiction under Section 301.").[2]

---

[2] As discussed, *infra*, Johnson's activities in New York undertaken on behalf of MWI are appropriately considered in determining whether this Court has specific jurisdiction over Johnson.

Here, Giannetta's factual claims about Johnson's contacts with persons in New York all arise from work in her capacity as Vice President of MWI (*e.g.*, recruiting contestants). None arise in her individual capacity. Therefore, even if Johnson's purported business activities in New York *as an agent of MWI* were sufficiently continuous and systematic, this Court would not have a statutory basis under CPLR § 301 to assert general jurisdiction over her as an individual. *See, e.g.*, *Laufer*, 55 N.Y.2d at 313–14 (declining to exercise general jurisdiction over the New York-based president of a nonresident corporation since all of his contacts with the state were on behalf of his employer); *Giuliano*, 2017 WL 1234042, at *6 (declining to exercise general jurisdiction over foreign individuals who acted in New York State solely on their employer corporation's behalf); *Big Apple Pyrotechnics & Multimedia Inc. v. Sparktacular Inc.*, No. 05 Civ. 9994 (KMW), 2007 WL 747807, at *4 (S.D.N.Y. Mar. 9, 2007) (no general jurisdiction over individual defendants whose only activities in New York were "in their capacities as corporate officers").

## B.    Specific Jurisdiction

In claiming personal jurisdiction, Giannetta principally argues that the Court has specific jurisdiction over Johnson under CPLR § 302(a)(3)(ii), on account of the injury that Johnson's assertedly defamatory statements caused her. That injury is the basis of both her claims: for defamation and for tortious interference with prospective economic advantage.

In light of the First Amendment interests implicated by claims—however styled—that sound in defamation or libel,[3] such claims are subject to a higher jurisdictional bar in New York.

---

[3] Under New York law, libel is a form of defamation. *See, e.g.*, *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000) ("Libel is a method of defamation expressed in writing or print."); *Idema v. Wagner*, 120 F. Supp. 2d 361, 365 (S.D.N.Y. 2000) ("Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander." (citing *Morrison v. Nat'l Broad. Co.*, 19 N.Y.2d 453, 458 (1967))).

*See* CPLR §§ 302(a)(2)–(3) (expressly excluding "cause[s] of action for defamation of character arising from the act"). "Defamation claims are accorded separate treatment to reflect the state's policy of preventing disproportionate restrictions on freedom of expression." *SPCA of Upstate N.Y., Inc. v. Am. Working Collie Ass'n*, 18 N.Y.3d 400, 404 (2012).

### 1.     Specific Jurisdiction in Defamation Cases

"Under New York law, when a person utters a defamatory statement without the state that causes injury to the plaintiff within the state, jurisdiction may be acquired under section 302(a)(1), even though section 302(a)(3)—which explicitly concerns jurisdiction as to out-of-state tortious acts that cause in-state injury—excludes defamation cases from its scope." *Best Van Lines*, 490 F.3d at 245–46. To establish personal jurisdiction under CPLR § 302(a)(1), two requirements must be met: (1) the defendant must have transacted business within the state; and (2) there must be "some articulable nexus between the business transacted and the cause of action sued upon." *McGowan*, 52 N.Y.2d at 272.

Statutory standing under CPLR § 302(a)(1) requires an underlying *business transaction* on which to establish specific jurisdiction—"some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382 (1967) (citation omitted). "There is a clear distinction between a situation where the only act which occurred in New York was the mere utterance of the libelous material and on the other hand, a situation where purposeful business transactions have taken place in New York giving rise to the cause of action." *Legros v. Irving*, 38 A.D.2d 53, 55 (1st Dep't 1971). In defamation cases, New York courts construe "transacts any business within the state" more narrowly than in other contexts. "In other cases, proof of one transaction, or a 'single act,' in New York is sufficient to invoke [long-arm] jurisdiction . . . . In defamation cases, by contrast, the 'single act'

15

of uttering a defamat[ory] [statement], no matter how loudly, is not a 'transaction of business' that may provide the foundation for personal jurisdiction." *Best Van Lines*, 490 F.3d at 248 (cleaned up).

To qualify for specific jurisdiction under CPLR § 302(a)(1), the cause of action also must have an "articulable nexus or substantial relationship" with the defendant's business transaction in the state. *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 340 (2012). New York courts have found "that they lacked jurisdiction over out-of-state defendants accused of having uttered defamatory falsehoods where the defamation claim did not arise from the defendants' specific business transactions in New York." *Best Van Lines*, 490 F.3d at 249–50 (cleaned up).

Examples of business transactions that were both substantial enough to form the basis of specific jurisdiction in defamation cases *and* which gave rise to the defamation claim include: researching for, negotiating and contracting for the publication of, and printing an allegedly defamatory book in New York, *see Legros*, 38 A.D.2d at 56; drafting and distributing (or authorizing the distribution of) an allegedly defamatory letter targeted to the Buffalo area, *see Sovik v. Healing Network,* 244 A.D.2d 985, 987 (4th Dep't 1997); and engaging in a protracted process *out of New York* to come up with an allegedly defamatory scheme, draft a letter, and send it directly to an individual in the state, *see Belya v. Hilarion*, No. 20 Civ. 6597 (VM), 2021 WL 1997547, at *6 (S.D.N.Y. May 19, 2021). Examples of activities that, without more, do *not* qualify are: brief visits and phone calls to the state and a donation of cash, *see SPCA of Upstate N.Y., Inc.*, 18 N.Y.3d at 405; sending two allegedly defamatory letters to the state, *see Morsy v. Pal-Tech, Inc.,* No. 07 Civ. 2143 (PKL), 2008 WL 3200165, at *5 (S.D.N.Y. Aug. 7, 2008); and, critically, writing defamatory material that was posted, at no cost, on a website accessible in New

York, *see Realuyo v. Villa Abrille*, No. 01 Civ. 10158 (JGK), 2003 WL 21537754, at *6 (S.D.N.Y. July 8, 2003).

In the context of website defamation cases, the Second Circuit has acknowledged the usefulness of the "sliding scale" framework first advanced in *Zippo Manufacturing Company v. Zippo Dot Com, Inc*., 952 F. Supp. 1119 (W.D. Pa. 1997), to "help frame the jurisdictional inquiry" in analyzing personal jurisdiction under § 302(a)(1). *Best Van Lines*, 490 F.3d at 252. On one end of this "scale" are defendants who have "simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions," and thus over whom a court cannot exercise specific jurisdiction under § 302(a)(1); on the other are those who "knowing[ly] and repeated[ly] transmit[tted] computer files over the Internet," over whom there is thus specific jurisdiction. *Zippo*, 952 F. Supp. at 1124. "The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.*

"New York case law establishes that making defamatory statements outside of New York about New York residents does not, without more, provide a basis for jurisdiction, even when those statements are published in media accessible to New York readers," such as a website. *Best Van Lines*, 490 F.3d at 253; *see also Realuyo*, 2003 WL 21537754, at *7. Nor is posting an allegedly defamatory comment on an interactive website sufficient. *See Best Van Lines*, 490 F.3d at 254.

## 2. Application

At the outset, the Court notes that the same jurisdictional analysis—that which is applicable to defamation claims—applies to both claims brought here. Although Giannetta argues that her claim for tortious interference with prospective economic advantage is subject to

17

CPLR § 302(a)(3)(ii), that claim rests upon Johnson's alleged defamatory statement and unavoidably sounds in defamation. And "it is well-established that Plaintiffs cannot evade [the bar to defamation claims] by recasting their defamation claims as other torts." *Shamoun v. Mushlin*, No. 12 Civ. 3541 (AJN), 2014 WL 12776779, at *4 (S.D.N.Y. March 26, 2014); *see also Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 157 (2d Cir. 1996) ("All of plaintiffs' claims are based upon [the] alleged defamatory statements. Plaintiffs may not evade the statutory exception by recasting their cause of action as something other than defamation." (citation omitted)); *Jolivet v. Crocker*, 859 F. Supp. 62, 65 (E.D.N.Y. 1994) ("[Because] these claims are based on the alleged defamatory letter, . . . § 302(a)(3) cannot serve to supply a basis for personal jurisdiction. To rule otherwise would provide a facile means for plaintiffs . . . to evade the statutory defamation exception."); *Am. Radio Ass'n, AFL-CIO v. A.S. Abell Co.*, 296 N.Y.S.2d 21, 23 (Sup. Ct. 1968) ("[P]laintiffs' attempt to convert the alleged tort from defamation to something else must be rejected as spurious."). The Second Circuit's holding in *Cantor Fitzgerald* defeats, particularly emphatically, Giannetta's argument that the personal-jurisdiction requirements for defamation claims do not apply here. 88 F.3d at 157. It also involved a claim for tortious interference with prospective economic advantage based on allegedly defamatory conduct. The Second Circuit held that the entire complaint, including its tortious interference claim, sounded in defamation because all claims were based on the same allegedly defamatory statements. *See id.* Accordingly, the Circuit held, specific jurisdiction over that claim could not be based on CPLR § 302(a)(2) or (3). *Id.*

So too here. Giannetta's tortious interference claim arises from the same facts—indeed, the same allegedly false press release—as her defamation claim. *Compare* Compl. ¶¶ 67–73 (explaining that the factual basis for her libel claim is Johnson's alleged publication and

circulation of the Press Release to Giannetta's business contacts and to the Sri Lankan Partners), *and* ¶ 85 (claiming that she is "entitled to general damages for harm to her property, business, trade, profession, occupation, [and] expenses," in damages resulting from her libel claim), *with id.* ¶ 93 (basing her claim for tortious interference on Johnson's allegedly sending the Press Release to the Sri Lankan Partners), *and* ¶ 96 ("The Defendant improperly interfered with the Plaintiff's prospective business relationships by sending the defamatory press release to the Sri Lanka Partners."). Accordingly, her tortious interference claim also sounds in defamation and therefore is expressly excluded from CPLR § 302(a)(3).

Giannetta's only remaining avenue is therefore to demonstrate that this Court has specific jurisdiction over the case under CPLR § 302(a)(1). In contrast to general jurisdiction, "it [is] possible to obtain [specific] jurisdiction over a corporate officer or employee based upon his contacts in New York, even if his activities were performed solely in a corporate capacity." *Kinetic Instruments, Inc. v. Lares*, 802 F. Supp. 976, 983 (S.D.N.Y. 1992). New York has abandoned the fiduciary shield doctrine, under which a corporate representative will not be subject to the state's jurisdiction where his only contacts with the state arise out his work for his employer. *See Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467–68 (1988). Accordingly, the Court may consider Johnson's contacts with New York undertaken on behalf of MWI.

However, even these contacts are insufficient. Assuming *arguendo* that, as Giannetta alleges, Johnson recruits contestants in New York and "routinely communicates . . . and transacts with . . . the pageant director and pageant contestants for the New York Pageant," Opp'n ¶ 17, these contacts cannot support specific jurisdiction over Giannetta's claims because her claims do not arise out of any of this conduct or any of these alleged business transactions, *see Best Van Lines*, 490 F.3d at 249–50 (New York courts lack specific jurisdiction over non-domiciliary

defendants where defamation claims do not arise from defendants' specific business transactions in the state.).

Giannetta pleads only two facts that tie Johnson's allegedly defamatory action to conduct in New York: Johnson published the press release in MWI's Facebook group, accessible to MWI affiliates across the country; and she allegedly sent it directly to MWI's New York pageant director. Compl. ¶¶ 48, 50–51. These are insufficient to hale Johnson into New York court on the basis of § 302(a)(1). As to the former action—posting on Facebook—even if Johnson's Facebook post permitted a degree of interactivity with the MWI directors so as to "lie[]" somewhere in the middle of the *Zippo* spectrum," the Press Release "is more akin to the type of 'passive' websites" identified at the far end of the *Zippo* scale, *DH Servs., LLC v. Positive Impact, Inc.*, No. 12 Civ. 6153 (RA), 2014 WL 496875, at *6 (S.D.N.Y. Feb. 5, 2014) (holding that Facebook promotions for events that permitted users to indicate whether they were attending did not satisfy § 302(a)(1)), particularly where, as here, no interaction between Johnson and any of the MWI directors is alleged. But even to the extent that Johnson's activity falls into the *Zippo* "middle ground," Johnson is not alleged to have transacted any business with the Facebook post or even in the Facebook group. *See Katiroll Co. v. Kati Roll & Platters, Inc.*, No. 10 Civ. 1703 (LTS) (RLE), 2010 WL 2911621, at *5 (S.D.N.Y. July 9, 2010) (finding that Facebook posts promoting defendant's business fell into the "middle ground" but were, without more, insufficient for jurisdiction under CPLR § 302(a)(1)).

That Johnson also sent the press release directly to individuals in New York is inconsequential, as Johnson engaged in *no other activity in the state* which might otherwise count as a "business transaction," and sending a letter to someone in the state, without more, is insufficient. *Compare Sovik*, 244 A.D.2d at 987 (jurisdiction found under CPLR § 302(a)(1)

20

where defendants, while in New York, allegedly drafted and "either distributed or authorized the distribution of" a letter targeted at the Buffalo area), *with Morsy*, 2008 WL 3200165, at *5 (court lacked personal jurisdiction pursuant to § 302(a)(1) when foreign defendants' only contact with the state was the "sending of two allegedly defamatory letters into New York"); *see also Kim v. Dvorak*, 230 A.D.2d 286, 290–91 (3d Dep't 1997) (holding that the defendant lacked sufficient contacts with New York to hale her into New York court pursuant to § 302(a)(1) when her sole contacts were four allegedly defamatory letters she sent from her residence in Massachusetts); *Best Van Lines*, 490 F.3d at 253 (for out-of-state individuals, publishing defamatory statements about New York residents in media accessible to New York citizens does not, without more, provide a basis for jurisdiction).

Accordingly, there is no statutory basis for specific jurisdiction over Johnson. Because CPLR § 302(a)(1) "permits personal jurisdiction under narrower conditions than does the Due Process Clause under the U.S. Constitution," *Knight v. Standard Chartered Bank*, No. 19 Civ. 11739 (PAE), 2021 WL 1226870, at *3 (S.D.N.Y. Mar. 31, 2021), the Court need not address whether the Due Process Clause would permit this Court to exercise specific jurisdiction over Johnson.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is granted without prejudice. The Clerk of Court is respectfully directed to terminate the motion pending at docket 9 and close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: June 24, 2021
        New York, New York